BERNARD KORFLAGE et al., respondents,

v.

HENRY KAHRS et al., appellants.

[Submitted December 11th, 1922. Decided March 5th, 1923.]

1. Where a party seeks, in equity, the specific performance of an oral contract to transfer the capital stock of a corporation, he must prove that the minds of the parties met on all the essentials of the contract, and proof that the oral agreement was to be reduced to writing, and signed by the parties is cognate, but not conclusive, evidence that the oral agreement was not final, and is quite persuasive, until overcome by other facts to the contrary.

2. The alleged oral contract provided that the unpaid purchase price should be secured by a chattel mortgage, without stating what chattels it should embrace, or any of its terms.—*Held*, that it was too indefinite to justify specific performance.

3. Where the facts justify the finding that the minds of the parties had not reached a final oral agreement, but that one party was to prepare the written contract, subject to the approval of the other, which was never executed, a case for specific performance is not made out.

On appeal from a decree of the court of chancery.

*Messrs. Reed & Reynolds,* for the respondents.

*Messrs. Osborne, Cornish & Scheck,* and *William Newcorn,* for the appellants.

The opinion of the court was delivered by

BERGEN J.

This bill was filed by the complainants Bernard Korflage and Bernard Mammes against Henry Kahrs, Bernard Wessels, Paul Rosen, and Emmanuel Scheck, and Henry Kahrs, Inc., a corporation of this state, for the specific performance of an oral contract for the sale of fifty shares of the common stock

of the corporation.    Specific performance was decreed and the defendants have appealed.    The proofs show that the defendant Kahrs was the owner of forty-eight shares of the fifty shares of the capital stock of the corporation, the other two shares being held, one each by Rosen and Scheck respectively, in order to qualify them to serve as directors of the corporation; that the business carried on by the corporation was the manufacture and sale of candy; that Mammes was an employe of the corporation under the management and control of the defendant Kahrs who was conducting the business; that Mammes went to the complainant Korflage and induced him to go into partnership with him to buy the stock, and the latter, on the 6th day of October, 1920, visited Kahrs, and claims to have entered into an oral agreement with the latter to purchase the fifty shares of stock of Kahrs'.    The complainant Korflage testifies that the oral agreement was that he, Korflage, and Mammes, were to buy the business for $15,000, to pay $2,000 in cash, and assume the payment of a chattel mortgage on the property of the company, held by one Rosen, amounting to $5,800, for which Kahrs had given his notes; that the difference between the purchase price and the chattel mortgage was to be paid as follows: $2,000 in cash, and the balance in notes payable monthly of $400 each, which were to include the payment due on the chattel mortgage, that is, part was to be paid on the chattel mortgage until it was paid off; that those notes were to be secured by chattel mortgage; that Korflage paid $1,000 and Mammes $1,000 which made the first payment, and that complainant also furnished $300 to be used as a bank account for the corporation after the transfer; that on October 8th, the defendant Kahrs signed a receipt reading, "received from B. Korflage and B. Mammes, the sum of $2,000 on account of shares of the H. Kahrs, Inc., stock, also $300 for deposit," which was delivered to Mammes, and by him to Korflage who kept possession of it; that the contract was to be reduced to writing, and signed in the office of a lawyer in New York city who was employed by Mr. Kahrs to draw it, and as soon as it was drawn and ready for signature, Kahrs was to notify Korflage.    A day or two after this,

Korflage went to Germany without signing the written agreement, and was gone for two months or over.

The story told by the defendant Kahrs relating to the oral arrangement was substantially as follows: that at the first meeting October 6th, 1920, they had a conversation about selling the stock and agreed on the price; that he was to go to his New York attorney and talk it over with him and lay out a plan to secure the unpaid balance of $7,200; that he was to talk to his lawyer about the security and the amount of payments and have the papers ready for execution at his office on Monday following, and that they were then to go over the papers and if everything was satisfactory they would sign them, and it was that night that the $1,300 was paid by the complainant, Korflage, and $1,000 afterwards by Mammes; that his lawyer prepared the papers as he instructed him, and he received them on Monday, October 11th; that he telephoned at once to Mr. Korflage, in the forenoon, but did not reach him; that Korflage afterward called him on the telephone when he told him, Korflage, that the papers were there ready for him to look over, and if satisfactory to him to be signed; that Korflage did not come and sign the papers, but went to Europe, and that later Kahrs sold the stock to the defendant Wessels. The contract prepared was put in evidence and is quite different in form from the oral agreement claimed by the complainants. From this testimony it is quite apparent that the oral agreement as stated by the complainant was very different from that testified to by the defendant Kahrs. It is quite manifest that the parties contemplated a written agreement, and the agreement as understood and prepared by Kahrs did not conform to that testified to by the complainant. It is also clear that it was in the contemplation of the parties that the agreement to be made was to be reduced to writing, and that would seem to be quite necessary because the oral agreement as testified to by the complainant provided for a chattel mortgage while that testified to by the defendant did not include any chattel mortgage. Mammes, the other complainant, testified that nothing was said at the first meeting about how they were to pay the balance and that

on the second night it was agreed that notes were to be given for the balance due Kahrs of about $300 or $400 a month, but that he did not remember how these notes were to be secured. We do not see how it can be said under this evidence that the minds of the parties had met in a final agreement which was to be reduced to writing, and which, when it was prepared under the direction of Kahrs, was radically different from that claimed by the complainant, at least it was not so conclusive as to justify a decree for specific performance. "If to a proposal or offer an assent be given, subject to a provision as to a contract, then the stipulation as to the contract is a term of the assent, and there is no agreement independent of the stipulation." *Wharton* v. *Stoutenburgh, 35 N. J. Eq. 266.* And in the same case Mr. Justice Depue, speaking for this court, said that the fact that a written agreement was in contemplation before the business was to be concluded was cognate, but not conclusive, evidence that the parties did not intend to bind themselves until the agreement was reduced to writing.

Vice-Chancellor Van Fleet, in *Domestic Telegraph Co.* v. *Metropolitan Telephone Co., 39 N. J. Eq. 160,* said: "Courts of equity may compel the specific performance of a contract which the parties have agreed upon and which is sufficiently certain and definite in its terms to enable the court to see what they meant, but it is entirely beyond the power of any judicial tribunal to make a contract for litigants or compel them to make a contract with each other. No specific performance of a contract can be decreed in equity unless the contract be actually concluded and be certain in all its parts. If the matter still rests in treaty, or if the agreement, in any material particular, be uncertain or undefined, equity will not interfere. Specific performance will not be decreed unless it is shown that the contract has been concluded. The bargain must be found completely determined between the parties and its terms definitely ascertained." The same vice-chancellor, in *Potter* v. *Hollister, 45 N. J. Eq. 508,* said: "When, however, it appears that the whole of the subject-matter about which the parties dealt is not embraced in

the letters on which the complainant relies, and their contract, for that reason, is incomplete—their minds never having come together—there a court of equity can do nothing, for it is only in cases of completed contracts, which are fair in themselves which have been fairly obtained, that equity can give relief by way of specific performance. Equity will always decline to interfere when the evidence leaves the terms of the contract in uncertainty, or if it be reasonably doubtful whether the contract was finally closed." In the instant case the terms apparently were not entirely concluded but a written contract was to be drawn and approved by both parties.

What the complainant Korflage says about a chattel mortgage being given to secure the unpaid balance is too indefinite and uncertain to be taken as the definite conclusion of the parties. It may well be that Korflage would have consented to the written agreement as prepared, although different from what he testified the oral agreement was, but he never executed it. He apparently was in great haste to get away on his visit to Germany and had no further time to complete and finish the contract. Certainly under the evidence in the present case the parties contemplated a written agreement as the final consummation of their bargain, and are at variance as to what the bargain really was, particularly as to the securing of the payment of the residue of the purchase price, Kahrs contending that he was to hold the stock as security while complainant contends that it was to be secured by a chattel mortgage, and in determining the truth as to this point it is quite important to bear in mind that one of the complainants, Mammes, who was present at the time when the alleged oral agreement was made, had no recollection of anything being said about the chattel mortgage or its terms. Mr. Justice Knapp, in speaking for this court in *Brown* v. *Brown, 33 N. J. Eq. 650,* said, "the bargain or promise to be enforced, whether it exists in the form of writing or be merely verbal, must possess, in substance and external form, the qualities and requisites of a valid contract."

The bargain must have been completely determined between the parties and its terms definitely ascertained, and we do

not think that these parties ever reached the point where it could be said they were agreed about all the essential terms of the contract. Nor does the conduct of Mammes, one of the complainants and a partner, indicate he conceived that the contract had been completed, for after Korflage had left for Europe he continued to work for Kahrs as theretofore without claiming any right as partner to have the business turned over to him upon payment by him of the balance due. In other words, he seemed to act as if he were waiting for Korflage to return and sign the contract. The case does not show enough to justify a finding that the minds of the parties had definitely met and determined the terms of the contract, which is necessary to support specific performance. The complainants may have a right to have the payment made refunded but that right can be enforced at law if it exists.

The final decree requires the defendants, including Wessels, the subsequent purchaser, to account for the profits of the business from the 8th day of December, 1920, until the date of the decree, and that in such accounting the defendant should be credited with the unpaid balance of the purchase price under the alleged contract, and if it appeared that any balance thereof is unpaid it should be paid as the court should then direct. This, plainly, is the making of a contract by the court for the parties as to the payment of the unpaid balance, without any indication whatever as to the character of the payment, whether in cash, or as the complainant insists, by notes and a chattel mortgage, or any other way, but such as the court shall determine. That the court had no power to do, for if the contract had been concluded the rights of the parties were fixed by it.

The decree will be reversed.

*For affirmance*—None.

*For reversal*—The CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, GARDNER, ACKERSON, VAN BUSKIRK—12.